In THE MATTER OF THE APPLICATION OF THE NEW YORK, LACKWANNA AND WESTERN RAILWAY COMPANY.

*Court of Appeals, June 1, 1886.*

1. *Railroads. Commissioners of appraisal under contract.*—A contract was made between the petitioner and owner of land for the sale thereof, whereby it was stipulated that the commissioners appointed under the general railroad law shall, in ascertaining and determining the compensation to be allowed, take into consideration the capability of the premises and property for any use whatever, and that they shall determine such compensation upon their own knowledge and information, as well as upon such evidence as may be produced before them. On a former appeal in this matter to the general term, the court laid down the rule that the owners were entitled to be allowed the fair market value of the property, and that this was the basis on which the estimate should be made by witnesses and the commissioners. Two of the commissioners, during the hearings, announced that they did not consider themselves bound by the supreme court decision on this point, and the petitioner made an application for their removal on the ground of misconduct in declining to be governed by the general term opinion. The court of appeals decided that, under the peculiar circumstances of this case, it could not be held to be misconduct in them to refuse to commit themselves, in advance, to a rule of decision which would exclude from their

consideration matters to which it was expressly agreed they might have reference in reaching a result; especially as there is nothing in the case to show that in declining to do so, they intended to be disrespectful to the court, or arbitrarily to overrule its opinion, or to be contumacious or perverse.

2. *Same. Review of awards.*—Though, under the statute, a railway company can not by appeal obtain a review, on the merits, of a second award, yet it is within the power of a court of equity to set aside any excessive award obtained by fraud or the misconduct of the commissioners, or for any cause which will justify the setting aside of an award of arbitrators; and such relief can be obtained on motion.

3. *Same. Appeal.*—An order of the general term affirming a special term order, vacating an order appointing commissioners in condemnation proceedings, is appealable to the court of appeals, as it is final and affects a substantial right.

Appeal from an order of the general term of the supreme court, modifying and affirming a special term order vacating the appointment of certain commissioners for the appraisal of land.

*Geo. F. Comstock* and *Morris Morey*, for appellants, Harriet A. Bennett and others.

*Sherman S. Rogers*, for respondent, New York, L. and W. R. R. Co.

RAPALLO, J.—This proceeding was instituted in pursuance of a written contract between the petitioner, the railway company, and the appellants, bearing date the twenty-fourth day of May, 1883. By that contract the railway company agreed to purchase of the appellant, Harriet A. Bennett, the property known as the " Union Elevator," at Buffalo, and with due diligence to take proceedings under the general railroad law for the purpose of ascertaining the value of the premises and of the erections thereon, and the compensation to be paid therefor, and of obtaining the title in fee thereto. It was stipulated in the contract that Nelson K. Hopkins, Robert Dunbar, and Brigham Clark should be appointed commissioners in said proceedings, to ascertain the compensation which ought justly to be made by the company to the

party or parties owning or interested in said property, and that the decision of the majority of them should be binding on both parties. It was further mutually agreed that the said commissioners should be governed, in estimating said valuation and compensation, by the rules of law applicable to proceedings under said statutes, " *excepting as they might be modified by this agreement*," and that all rights of appeal given by law should be reserved to either party. It was expressly agreed that in said proceedings no damage should be allowed because of injury to the Bennett elevator property, or any adjoining or adjacent premises, or any compensation allowed for anything except the actual value of the premises and property described in the agreement ; that, in ascertaining the compensation to be allowed, the commissioners should " take into consideration the capability of the premises and property for any use whatever; " and that they should determine such compensation without delay, and upon their own knowledge and information, as well as upon such evidence as might be produced before them. The contract then went on to provide that the value finally arrived at in said proceedings should " be the fixed purchase price " to be paid by the railway company. It prescribed the time of payment and of delivery of possession, and also provided for the execution and delivery, by the appellant Harriet A. Bennett, to the company, of a deed, with covenants of seizin and for quiet enjoyment, conveying a perfect title to the premises, except as to certain incumbrances for which allowance was to be made out of the purchase money. The contract contained further stipulations respecting mutual accommodations in the use of their docks by the Union elevator and Bennett elevator properties, and various other stipulations not affecting the main question presented upon this appeal, but to which it may be necessary incidentally to refer.

The proceeding for the appraisement of the property agreed to be sold, was instituted by the railway company,

as it had agreed, and in October, 1883, in that proceeding, thus instituted, an order was made by the supreme court at special term in the fourth department, appointing the three gentlemen named in the contract commissioners to appraise the property. They made a report in January, 1884, fixing the compensation to be paid at the sum of $469, 375, which report was confirmed at special term; but, on appeal by the company to the general term, the order of confirmation was reversed, and the commissioners' report was set aside. On that appeal an effort was made by the railway company to have new commissioners appointed; but the supreme court refused that relief on the sole ground that it had not the power to grant it because the parties had, by their contract, agreed upon the commissioners. From that decision the railway company appealed to this court. No appeal was or could have been taken by the property owners from that part of the order which set aside the report of the commissioners, and consequently there has been no review here by that part of the decision of the general term. The ground on which that tribunal refused to appoint new commissioners was, however, reviewed here, and the decision was fully sustained. 98 N. Y. 447. The case then went back for a rehearing before the same commissioners, and, while that rehearing was pending before them, the railway company made a motion to the court at special term to vacate the order appointing the commissioners on the ground of alleged misconduct on their part. The allegations of misconduct contained in the moving papers were of two classes. One was that Mr. Robert Dunbar, one of the commissioners, had business relations with the claimants Bennett and wife which prevented him from being a disinterested appraiser. These charges were answered at the hearing at special term to the satisfaction of the presiding judge; and the counsel for the company does not now complain of the disposition made of that branch of the charges; but he confines himself on this appeal to the re-

maining branch, which is, in substance, that commissioners Dunbar and Clark, on the second hearing, declined to be governed by the opinion of BRADLEY, J., who delivered the opinion of the general term on the appeal from the order confirming the report of the commissioners. This refusal was regarded by the court below as misconduct which justified it in vacating the appointment of commissioners, and thus necessarily terminating the proceeding.

The precise manner in which the alleged misconduct is claimed to have been committed is set forth in the brief of the counsel for the railway company, and in the moving affidavits, which, for the purpose of this appeal, we must assume to be correct. Evidence had been admitted, on the first hearing before the commissioners, of the manner in which the property in question could be utilized by expending a large sum in increasing the capacity of the elevator, and estimating the income which it would be capable, with these improvements, of producing and these estimates were mainly based upon evidence of the income earned by other elevators in Buffalo; and opinions as to the value of the property in question had been given, based, not upon the market prices of the property as it was at the date of the contract, but upon what it might be made to pay by improving it as an elevator; also of its capacity to handle grain, if improved and operated in connection with the Bennett elevator, which was alongside. Evidence had been admitted, on that hearing, of estimates based upon projected connections with railroad companies, and facilities for transportation not under the control of the owners of the property in question, and other speculative matters.

In the opinion delivered by BRADLEY, J., and before referred to, the learned judge said that, when compared with other sales of property in the same locality, the value, as appraised by the commissioners, was exceptionally large; and he commented upon the evidence which had been given before the commissioners, and pointed out the contingencies

to which some of the considerations on which the witnesses based their estimates were subject, and expressed the opinion that these estimates were matters of speculation, dependent on too many circumstances to be entitled to consideration as evidence of value.   In these observations he referred, among other things, to the evidence as to the contemplated relation of the property to, and its operation in connection with, other property, and projects for connecting facilities with channels of transportation not within the control of the then owner of the property in question; and he said that, in view of all the testimony, it was difficult to escape the conclusion that the commission reached the result which they did by the application of erroneous principles to the appraisal of the value of the property in question, and that the amount of compensation awarded by their report was by that means increased considerably in excess of the fair market value of the property.   In this opinion the learned judge laid down the rule that the owners were entitled to be allowed the fair market value of the property, and that was the basis on which the estimate should be made, and allowed, by witnesses and the commission.

On the second hearing before the commissioners, evidence of David S. Bennett was received of a valuation based upon the probable earnings of a new elevator of a certain capacity, if erected upon the lot in question, based upon the past earnings of two elevators, which were named, and upon projected connections with lines of transportation. After the examination of this witness had been concluded, the counsel for the railway company moved to strike out his testimony so far as it assumed to give a value in dollars to the property in question.   The grounds of the motion were specified; one of them being that the testimony on which the estimate was founded was inoperative and worthless under the decision of the general term.   The motion to strike out the evidence was finally denied; Commissioner

Hopkins being in favor of striking it out, Commissioners Clark and Dunbar of retaining it, Commissioner Dunbar saying that he was inclined to receive the evidence, and give it the weight which he thought proper. The question was raised at other stages in the case, and the substance of the struggle was, on the part of the railway company, to maintain that the decision of the general term was that the evidence and the valuation should be confined to the market value of the property as it was at the date of the contract, and that this decision was binding upon the commissioners, and should be followed by them; while, on the other hand, it was claimed that they were not so restricted, but were entitled to consider the rights of the parties under the contract, and make a just award between them; and reference was had to the opinion of this court on the first appeal.

The commissioners were then requested, by the counsel for the railway company, to rule on three propositions, viz.: *First*, there cannot be taken into consideration, in arriving at the value of the property, the probabilities of a connection with the railroad of the petitioner as one element affecting that value; *second*, that the opinion of the general term in the proceeding is controlling upon the commissioners as to the principles which should govern them in making their award; *third*, that the measure of the award is the fair market value of the property as it was at the date of the contract. The commissioners then adjourned without ruling on the propositions, and at their next meeting, having consulted among themselves, Commissioner Dunbar announced that he did not consider himself bound by the supreme court decision, but did consider himself bound and sworn to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in the property, and that he considered himself bound to do justice between the parties, and as much justice to the railroad commissioners

as to Mr. Bennett, as far as he knew.  Commissioner Clark concurred with Commissioner Dunbar.

That the decision of Commissioner Dunbar, to the effect that he did not consider himself bound by the supreme court decision, had reference to that part of the opinion of Judge BRADLEY which held that the basis upon which the appraisement should be made was the market value of the property, is made very clear by the colloquy set forth in the moving affidavits, and by the request of the counsel for the railroad company to the commissioners to rule upon the point.  Mr. Dunbar introduced the remark, by saying, " Mr. Hopkins spoke to me this morning in respect to following the general term decision ; " and Mr. Hopkins stated that the particular point to which he had called the attention of Mr. Dunbar was as to the manner of arriving at the value of the real estate.

It is needless to go over the various forms in which the question was raised by the counsel for the company, as it clearly appears that the substance of the whole controversy was whether the commissioners were bound to follow the rule laid down in the quoted portion of the opinion of BRADLEY, J., at general term, on the case as there presented to him, and to exclude from their consideration, in making their appraisal, all evidence except such as bore upon the market value of the property as it was at the date of the contract ; thus excluding estimates based upon the development of the property by means of improvements of which it was capable, and the probable increase which might be derived therefrom by means of such improvements ; and the question for our determination is whether the commissioners, in declining to hold, in advance of any appraisal, that they were concluded on the point referred to, were guilty of misconduct which authorized the court below to vacate the order appointing them, and thus terminate the proceeding.

In respect to these matters the position of the commis-

sioners was peculiar. They were not acting merely as officers of the court, owing their appointment solely to it, but they had been selected by the solemn contract of the parties; and that contract established the principles by which they should be governed in making the appraisement. After the decision of the general term on the first appeal had been pronounced, the case had come before this court, and it had adjudged that the provisions of the contract so far as they bound the parties, were binding upon the court in carrying the contract into effect. Even if it should be conceded that the court had it originally in its power to decline to lend its aid to the carrying out of the contract, by refusing to appoint commissioners, and thus disabling the company from taking the first step which was essential to give vitality to the contract, it does not follow that after the court had entertained the proceeding, and set the machinery in motion by which rights had accrued to the parties, it could of its own volition, or in its mere discretion, terminate those proceedings, or require them to be conducted in a different manner or on different principles from those which had been agreed upon. On the former appeal to this court it was held that, notwithstanding the right of appeal was reserved to both parties, and notwithstanding that the statute authorized the court in ordinary cases, on the first appeal, not only to set aside the award of the commissioners, but to appoint new commissioners, yet that in this case it could not exercise the power to change the commissioners, because that would be a violation of one of the terms of the contract.

The same principle applies in respect to the rules which should govern the commissioners in making their appraisement. The contract provided in that respect, that they should be governed by the rules of law applicable to proceedings under the statute, *except as they might be modified by the contract.* One of these modifications was that no damages should be allowed because of injury to the ad-

jacent premises. Could it be seriously argued that the court could, at the instance of the property owners, have required the commissioners to allow such damages because the statute authorize their allowance, or that it would be misconduct on their part, which would authorize their removal, to refuse to make such allowance if the court had, at some previous stage of the case, decided that it was proper? Assuming that the learned counsel for the company is right in claiming that the general rule in condemnation proceedings is, as he asked the commissioners to hold, " that the measure of the award is the fair market value of the property *as* it was at the *date of the contract,*" and that this was a correct rendering of the opinion of the general term, we come back to the question whether the commissioners were bound so to decide in this case, in the face of the express stipulation of the contract " that, in ascertaining and determining the compensation to be allowed the said commissioners shall take into consideration the capability of the premises and property for any use whatsoever, and that they shall determine such compensation upon their own knowledge and information, as well as upon such evidence as may be produced before them." This language is much more comprehensive than " the market price" or "market value" of the premises at the date of the contract, and shows that the real value was to be ascertained, predicated, not merely upon the condition of the property as it was at the date of the contract, or the uses to which it was devoted at that time, but upon its capabilities for any use whatever; and would fairly admit, as an element of value, evidence of the improvements of which it was capable, and of the revenues which might with reasonable certainty be expected to be derived from the development of those capabilities. The peculiar nature of the property might be such that it had no fixed market value, and the parties therefore agreed that the commissioners, who were persons of experience, acquainted with the means of rendering property of that description available, might

take into consideration what it was capable of yielding with reasonable and judicious development and management.

Of course as just and reasonable men, it would not be expected that they would calculate as certainties profits which were speculative, and contingent or variable, but the language of the contract certainly implies that they were not to be confined, in their estimate, to the sum which it could be proved the property would bring if exposed for sale in the open market, or to a valuation based upon sales of other property in the vicinity. They were selected and agreed upon by the parties as competent judges of the real value of property of the description which was the subject of inquiry, and it is not to be assumed that they would omit to make due allowance for contingencies and uncertainties and to properly weigh the evidence in connection with their own knowledge and information, to which, by the terms of the contract, they were expressly authorized to resort; and we are of opinion that, under the peculiar circumstances of this case, it could not be held to be misconduct in them to refuse to commit themselves, in advance, to a rule of decision which could exclude from their consideration matters to which it was expressly agreed they might have reference in reaching a result.

There is nothing in the case to show that, in declining to decide as required by the counsel for the company, they intended to be disrespectful to the court, or arbitrarily to overrule the opinion referred to, or to be contumacious or perverse; but, on the contrary, it would rather seem that they intended conscientiously to perform their duty conformably to the contract under which they were appointed. The contract was one which secured advantages to both parties in return for rights which they surrendered. The railroad company evidently desired to acquire the property; and, if it had been compelled to resort to proceedings *in invitum*, it would have been open to the owners to resist them, and to contest the questions whether the property was re-

quired for railroad purposes, and whether the railroad company could in any event acquire more than a right of user. These points the owners surrendered by covenanting to give a deed in fee, conveying a perfect title, with covenants of seizin and quiet enjoyment, which no law could have compelled them to do. They also abandoned their claim to damages to adjacent property, which the law would have allowed, and they also agreed to withdraw the suits which they were then prosecuting against the company in relation to Darkbasin alley, and to assign to the company all their rights in that alley; also to convey to the company all their rights in and adjoining the Evans ship-canal, which the company were at the time seeking to obtain by proceedings under the railroad law. Various other arrangements for the mutual convenience of both parties were provided for in the contract, and the whole was based upon the assurance of a just compensation being made for the Music elevator property, by having it appraised by three gentlemen of experience, agreed upon by the parties, who were to value the property in the manner provided by the contract. To require those arbiters to adopt any different rule of valuation, after the contract had been partly performed, and when the company was in the enjoyment of some of the benefits which were to be granted to them on its performance, would be a subversion of the rights of the appellants under the contract, which is inadmissible.

It must further be observed that the application to vacate the appointment of the commissioners' was made and granted before any appraisal or award had been made by them, and before it could be known what effect they would give to the evidence on the question of value, which they admitted, and declined to strike out. Commissioner Clark stated, in answer to the motion to strike out, that he thought the evidence was in the same line as that which was admitted on the former trial, and that he thought it ought to be received, and Commissioner Dunbar stated that he was in-

clined to receive it, and give it the weight he thought proper. There was nothing in this which was final, or which showed that the commissioners might not, in arriving at a decision, be guided in their judgment by the reasoning of the general term as to the weight to be given certain portions of the evidence, and might not finally reach a just award. Some of the evidence on which Mr. Bennett had based his valuation related to facts explanatory of the capabilities of the property, which, in our judgment was proper to be considered, and some to estimates and projects uncertain and conjectural in their character. It was certainly not impossible that, in weighing this evidence, the commissioners, enlightened by the opinion of the general term, might make the proper discriminations, and form a sound judgment in the end. There was no evidence impeaching their integrity in the matter, and the learned counsel for the respondent, in their argument in reply, expressly state that they do not charge actual dishonesty on the part of the two commissioners, but do charge an obstinate and perverse determination to follow in the forbidden paths, and on that ground claim the right to remove them before it can be ascertained, by their decision, to what result the paths alleged to be forbidden will lead them.

In answer to the objection that the removal was, to say the least, premature, they reply the finality of the second report, under the general railroad act; and on this ground demand that the appellants should be absolutely debarred of the means of enforcing their contract of sale in the manner provided by the contract, on the mere apprehension that the commissioners will, through mere obstinacy and perversity, make an excessive award against them, and that in that case they would be without remedy. Aside from other answers to this argument of the respondent, a sufficient one is that although, under the statute, the petitioners could not by appeal obtain a review, on the merits, of a second award yet it would be within the power of a court of equity to set

aside any excessive award obtained by fraud or the misconduct of the commissioners, or for any cause which would justify setting aside an award of arbitrators ; and in a proceeding like this the same relief could be obtained on motion. If this application had not been made, and the commissioners had proceeded to a second award, it could have been set aside if misconduct could be shown ; and the same remedy will again be open to the petitioners if the second award is impeachable for that cause.   But it should not be assumed, in advance, that the commissioners will, in making their final award, be guilty of misconduct or bad faith, or willful disregard to the legal rights of either party.   In this case the apprehension that they will do so is mainly founded upon the fact that their first award was unsatisfactory to the petitioners, and was set aside by the court as excessive.   The court at general term had power, on that appeal, to review the award on the merits, and order a rehearing, and that order was not reviewable in this court.   What award they will make on the rehearing cannot now be known, and the mere apprehension that it will be excessive is not sufficient to justify their being prevented from making any.   Livingston v. Sage, 95 N. Y. 289.

We have no doubt of the appealability of the order.   It was final, as it necessarily terminated the proceeding : and it affected a substantial right, as it deprived the appellants of the fruits of their contract by rendering its enforcement impossible.

The orders of the special terms should be reversed, and the application to vacate the order appointing commissioners denied with costs.

All concur, except Ruger, C. J. and Earl, J. dissenting.